UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Saundra M. McNair,** )<br> )<br>**Plaintiff,** )<br> )<br>v. )<br> )<br>**District of Columbia,** *et al.,* )<br> )<br>**Defendants.** )<br> ) | **Civil No. 15-cv-00729 (APM)** |

## MEMORANDUM OPINION AND ORDER

**I.     BACKGROUND**

From March 2009 to October 2013, Plaintiff Saundra M. McNair worked as an Administrative Law Judge ("ALJ") for the District of Columbia Office of Employment Services ("DOES"), an agency of Defendant District of Columbia. Am. Compl., ECF No. 12, ¶¶ 15, 49. Plaintiff suffers from a variety of physical disabilities. To accommodate her disabilities, DOES initially allowed her to work a modified schedule, starting her day at 7:00 a.m. and ending it at 3:30 p.m. *Id.* ¶¶ 16-17. Later, Plaintiff sought further accommodation in the form of working from home, which DOES denied. DOES then rescinded her initial accommodation—working a modified schedule—and insisted that she work from 8:30 a.m. to 5:30 p.m. Notwithstanding her employer's action, Plaintiff continued to work the modified schedule. In response, DOES treated her as absent without leave ("AWOL") for the hours that she was not physically present in the workplace. *Id.* ¶¶ 19, 24-29. Eventually, Plaintiff accrued nearly 200 hours of AWOL time, leading to her termination. *Id.* ¶¶ 43, 49.

In her Amended Complaint, Plaintiff advances a host of federal and District of Columbia statutory claims and common law claims, contesting the legality of her treatment and termination. Her pleading is a not model of either clarity or brevity. Plaintiff has advanced no less than twelve separately labeled "Claims for Relief." Many of these claims—specifically her Third, Fourth, and Fifth Claims—are predicated on multiple statutory bases. The court has attempted to untangle the knot that is Plaintiff's pleading—with Defendant's commendable assistance—and understands her Amended Complaint to allege the following claims: (1) failure to accommodate under the Americans with Disabilities Act ("ADA") (First Claim); (2) disability discrimination under the District of Columbia Human Rights Act ("DCHRA") (Second Claim); (3) race and gender discrimination under Title VII, the DCHRA, the Equal Pay Act, and the Lilly Ledbetter Fair Pay Act (Third Claim); (4) failure to compensate under the Fair Labor Standards Act (Third Claim); (5) retaliation under the ADA, Title VII, and the DCHRA (Fourth Claim); (6) retaliation under the National Labor Relations Act (Fourth Claim); (7) retaliation under the federal Whistleblowers Protection Act and the analog of that Act under District of Columbia law (Fifth Claim); (8) intentional infliction of emotional distress (Sixth Claim); (9) negligent infliction of emotional distress (Seventh Claim); (10) negligent supervision (Eighth Claim); (11) negligence per se (Ninth Claim); (12) defamation per se (Tenth Claim); (13) civil conspiracy (Eleventh Claim); and (14) constitutional tort (Twelfth Claim). *See generally* Am. Compl.

This matter is now before the court on Defendant District of Columbia's Motion to Dismiss Counts 3 through 11 of the Amended Complaint. *See generally* Mot. to Dismiss Counts 3 through 11 of the Am. Compl., ECF No. 17; Mot. to Dismiss, Mem. in Support, ECF No. 17-1 [hereinafter

Def.'s Mem.].[1] For the reasons discussed below, the court grants in part and denies in part Defendant's Motion.

## II. LEGAL STANDARD

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept a plaintiff's factual allegations as true and "construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). The court need not accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "inferences . . . unsupported by the facts set out in the complaint," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the complaint need not be "detailed"; however, the Federal Rules demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* If the facts as alleged fail to establish that a plaintiff has stated a claim upon which relief can be granted, a court must grant the defendant's Rule 12(b)(6) motion. *See Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.,* 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

---

[1] The individual defendants have separately moved to dismiss all claims against them. *See* ECF No. 17. That motion is not yet fully briefed.

IV. DISCUSSION

    A. **Race and Gender Discrimination Claims (Third Claim)**

        *1. Title VII and DCHRA*

The court begins with Plaintiff's race and gender discrimination claims under Title VII and the DCHRA. During her time at DOES, Plaintiff alleges that she "was both sexually (gender) and racially discriminated against in respect to hiring, promotion, equal work for equal pay, and the use of the [reasonable accommodation] system," in violation of Title VII and the DCHRA. Am. Compl. ¶ 75.

Title VII prohibits an employer from "discriminat[ing] against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Similarly, the DCHRA makes it illegal for an employer to discriminate on the basis of "race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, family responsibilities, genetic information, disability, matriculation, or political affiliation." D.C. Code § 2-1402.11. Under both of these statutes, at the motion-to-dismiss stage, a plaintiff does not need to prove a *prima facie* case of discrimination. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002); *see also Twombly*, 550 U.S. at 569–70 (affirming that *Swierkiewicz* remains good law). Instead, a plaintiff need only allege that she (1) suffered an adverse employment action (2) because of her membership in a protected category. *See Hill v. Bd. of Trs. of the Univ. of the D.C.*, 146 F. Supp. 3d 178, 184 (D.D.C. 2015); *see also Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008); *Daka v. Breiner*, 711 A.2d 86, 94 (D.C. 1998) (noting that Title VII cases are particularly persuasive in evaluating DCHRA claims).

Courts in this Circuit "have consistently recognized the ease with which a plaintiff claiming employment discrimination can survive . . . a motion to dismiss." *Fennell v. AARP*, 770 F. Supp.

2d 118, 127 (D.D.C. 2011) (quoting *Rouse v. Berry*, 680 F. Supp. 2d 233, 236 (D.D.C. 2010)) (internal quotation marks omitted). In other words, "the factual detail required to survive a motion to dismiss can be quite limited." *Hill*, 146 F. Supp. 3d at 184-85 (citations omitted). Yet, although a plaintiff asserting a discrimination claim is not required to plead a *prima facie* case, she still must plead sufficient facts to show a plausible entitlement to relief. *Spaeth v. Georgetown Univ.*, 839 F. Supp. 2d 57, 63 (D.D.C. 2012).

Here, Plaintiff has pled a plausible Title VII race discrimination claim. She alleges that "ALJs and AAJs" that "were members of a different race and color than Plaintiff," "[were] permitted to work from home" but that she was prohibited from doing so. Am. Compl. ¶ 19. Although the complaint admittedly lacks in specifics, Plaintiff has alleged the basic elements of a race-based discrimination claim—that DOES took an adverse employment action[2] against her while not taking the same action against similarly situated employees of a different race. This is sufficient to put Defendant on basic notice of her claim against it and to satisfy the pleading standard for discrimination claims. *See Vaughan v. Acheson*, Civ. No. 10–2184 (ABJ), 2011 WL 1515733, at *2 (D.D.C. Apr. 20, 2011) (noting that "the plaintiff's obligation at the pleading stage is to put the defendant on notice of claims against it," which can be accomplished even in a "complaint [that] is short on detail"). The court has concluded that Plaintiff has pleaded at least one racially-motivated adverse employment action—DOES' refusal to allow her to work from home. Therefore, Plaintiff's race discrimination claim shall be permitted to proceed, including to the extent it alleges other adverse actions, such as failure to promote and termination.

---

[2] Because Defendant does not contend that the refusal to permit an employee to work from home is not, in fact, an adverse employment action, the court will accept only for purposes of this opinion that it is an adverse employment action.

In contrast, Plaintiff's claim of gender discrimination does not satisfy the *Swierkiewicz-Twombly* pleading standard. Not once in her Amended Complaint does Plaintiff allege that DOES specifically treated *men* differently than they treated her as a woman.[3] Instead, she avers that she "was the *only employee* in her office who was either denied an [alternative work schedule] or who had their [alternative work schedule] rescinded/removed." Am. Compl. ¶ 74 (emphasis added). She further states that she "was not considered for promotion as similarly situated ALJ's although she performed the exact same job duties." *Id.* ¶ 77. Neither of these statements indicate that Plaintiff was treated differently than her male counterparts on account of her gender; rather, they suggest that, at best, she was treated differently from all other employees—which presumably includes both men and women. *See, e.g.*, *Greer v. Bd. of Trs. of Univ. of D.C.*, 113 F. Supp. 3d 297, 310-11 (D.D.C. 2015) (noting that the "unavailability of details"—including whether positions went to others outside the protected class—"does not excuse Plaintiff from alleging, on information and belief if necessary, the general sequence of events and basic facts"); *see also Belton v. Palisades Med. Ctr.*, 2013 WL 2444046, at *2 (D.N.J. 2013) (dismissing a Title VII claim where the plaintiff failed to "allege that non-members of a protected class were treated more favorably . . . [and did] not allege any facts that would give rise to an inference of unlawful discrimination"). The only other allegations that Plaintiff makes that plausibly could be construed to involve gender, *see* Am. Compl. ¶¶ 5, 7, 21, 75, are conclusory statements that are "not entitled to the assumption of truth," *Iqbal*, 556 U.S. at 679. Plaintiff thus has not successfully alleged a claim of gender discrimination under Title VII and the DCHRA.

---

[3] In her Opposition, Plaintiff attempts to remedy this error by referring to "male counterparts" and "male ALJ counterparts." Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss Counts 3 through 11 of the Am. Compl., ECF No. 23 at 23. Because she may not amend her Amended Complaint in her Opposition, however, those characterizations do not affect the court's opinion. *See Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 160 n.7 (D.D.C. 2014) ("It is well settled law that a plaintiff cannot amend his or her complaint by the briefs in opposition to a motion to dismiss.").

*2.     Equal Pay Act*

Plaintiff's discrimination claim under the Equal Pay Act ("EPA") likewise must be dismissed. To plead an EPA violation, a plaintiff must allege that: (1) she was "doing substantially equal work on the job, the performance of which required substantially equal skill, effort, and responsibility as the jobs held by members of the opposite sex"; (2) "the job was performed under similar working conditions"; and (3) she was "paid at a lower wage than members of the opposite sex." *Cornish v. District of Columbia,* 67 F. Supp. 3d 345, 360–61 (D.D.C. 2014) (citations omitted). Courts in this Circuit have recognized that the EPA "overlaps" with Title VII, and that the two statutes should be "construed harmoniously with the result that the principles developed under each . . . [be] applied interchangeably" with the other. *Hardy v. Bowen*, Civ. No. 85–2119, 1986 WL 15710, at *8 (D.D.C. Nov. 19, 1986) (citing *Cnty. of Washington v. Gunther*, 452 U.S. 161 (1981)).

Similar to her "overlapping" Title VII gender discrimination claim, Plaintiff does not allege that DOES treated her differently than her male counterparts. As discussed, the Amended Complaint alleges that she "began employment at a lower grade and pay scale that other similarly situated employees," but fails to allege that those similarly situated employees were "members of the opposite sex" as required under even the liberal pleading standard applicable here. Stated simply, Plaintiff fails to allege that she was "paid at a lower wage" than men in her office for "doing substantially equal work" and thus her claim must be dismissed. *Cornish,* 67 F. Supp. 3d at 360–61.

*3.     Lilly Ledbetter Fair Pay Act*

Plaintiff also alleges that "she was both sexually (gender) and racially discriminated against . . . in violation of . . . the Lilly Ledbetter Fair Pay Act of 2009." Am. Compl. ¶ 75. The Lilly

Ledbetter Fair Pay Act, however, does not grant plaintiffs a stand-alone cause of action. Rather, it "amend[s] [Title VII and the ADA] to clarify that a discriminatory compensation decision . . . occurs each time compensation is paid pursuant to the [discriminatory decision]." Pub. L. No. 111–2, 123 Stat. 5 (2009). The Act essentially functions to extend the statute of limitations for discriminatory compensation claims and thus does not provide a separate cause of action. To the extent that Plaintiff is alleging a separate discrimination claim under the Act, the claim must be dismissed.

      **B.**     **Violation of the Fair Labor Standards Act (Third Claim)**

Plaintiff also alleges that DOES "erroneously charge[d] [her] with AWOL . . . in spite of knowledge that [she] worked a full 40 hour work week . . . [and thus] illegally withheld pay and benefits" in violation of the Fair Labor Standards Act ("FLSA"). Am. Compl. ¶ 43. A plaintiff may state a claim for relief under the FLSA if they demonstrate that they "have in fact performed work for which [they were] improperly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Plaintiff has alleged facts in support of her claim by alleging that DOES refused to compensate her for those hours for which DOES declared her AWOL, but which she claims to have worked. *See* Am. Compl. ¶¶ 50, 72, 80. Thus, Defendant's motion to dismiss Plaintiff's FLSA claim will be denied.

      **C.**     **Retaliation under the ADA, Title VII, and the DCHRA (Fourth Claim)**

Next, Plaintiff asserts that DOES retaliated against her in violation of the ADA, Title VII, and the DCHRA. The Amended Complaint specifies only one adverse action as the basis for her retaliation claims: her termination. Am. Compl. ¶ 83 ("discriminatory termination"), ¶ 84 ("removed the Plaintiff from her position as an ALJ in retaliation"), ¶ 85 ("removed the Plaintiff from her job in retaliation"). Although in her Opposition, Plaintiff suggests that she has raised

other adverse employment actions—namely, the denial of reasonable accommodations and the docking of her pay, *see* Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss Counts 3 through 11 of the Am. Complaint., ECF No. 23 [hereinafter Pl.'s Opp'n], at 27—Plaintiff's Opposition cannot amend her pleading, *see Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 160 n.7 (D.D.C. 2014) ("It is well settled law that a plaintiff cannot amend his or her complaint by the briefs in opposition to a motion to dismiss."). Accordingly, the court will evaluate only whether Plaintiff has sufficiently pleaded that DOES fired her for exercising equal employment opportunity ("EEO") rights.

In order to sustain a claim for retaliation at the motion-to-dismiss stage, "a plaintiff must show that "(1) he engaged in a statutorily protected activity; (2) his employer took an adverse personnel action against him; and (3) a causal connection exists between the two." *Keys v. Donovan*, 37 F. Supp. 3d 368, 372 (D.D.C. 2014); *see also Harris v. D.C. Water & Sewer Auth.*, 791 F. 3d 65, 68 (D.C. Cir. 2015). The third prong of the pleading standard—causation—"may be established if the plaintiff alleges that the employer had knowledge of the protected activity and that the adverse action occurred soon thereafter." *Greer*, 113 F. Supp. 3d at 311 (citation and internal quotation marks omitted).

The court agrees with Defendant that "the temporal proximity between [Plaintiff's] alleged protected activity and [the] alleged retaliation is too remote to support an inference of causation." Def.'s Mem. at 10. Courts that accept that "mere temporal proximity" between a protected activity and an adverse employment action can establish sufficient evidence of causality "uniformly hold the temporal proximity must be '*very close.*'" *Keys*, 37 F. Supp. 3d at 372 (collecting cases). Although "neither the Supreme Court nor the [D.C. Circuit] has established a bright-line three-

9

month rule," *id.*, "three months is perceived as approaching the outer limit," *Greer*, 113 F. Supp. 3d at 311 (citing *Hamilton v. Geithner*, 666 F.3d 1344, 1357-58 (D.C. Cir. 2012)).

Here, the only protected EEO activity under Title VII that Plaintiff undertook occurred in May 2010, when she filed a race and gender discrimination complaint with the Equal Employment Opportunity Commission. Am. Compl. ¶ 21. Plaintiff, however, was not terminated until October 2013, nearly three-and-a-half years later. *Id.* ¶ 43. Clearly, the temporal proximity between Plaintiff's protected Title VII activity and her termination cannot support a claim of relation on its own. *See, e.g.*, *Greer*, 113 F. Supp. 3d at 311-12 (granting motion to dismiss a retaliation claim that alleged a two-year gap between the protected activity and retaliation); *cf. Keys*, 37 F. Supp. 3d at 373 (holding that a retaliation claim "just clear[ed] the bar" on a motion to dismiss where there was a three-month interval between the protected activity and retaliation).

Plaintiff appears to argue in her Opposition that there is temporal proximity between her EEO complaint and DOES' alleged retaliatory actions because she went on disability leave for two years soon after the complaint was filed and experienced retaliatory action soon after she returned. Pl.'s Opp'n at 27. In other words, she contends that the time that she was away from work should not factor into the causation inquiry. Plaintiff has offered no authority to support such a proposition. And, even if she had, it would not help her. Plaintiff returned to work in April 2012, and DOES terminated her employment in October 2013. The passage of 18 months negates any plausible inference that might support causation. Accordingly, the court dismisses her retaliation claim under Title VII and her related retaliation claim under the DCHRA.

The court, however, reaches a different conclusion with respect to Plaintiff's retaliation claim under the ADA and her related claim under the DCHRA. According to the Amended Complaint, Plaintiff's last protected activity under the ADA occurred on September 16, 2013,

when she submitted a written justification for her request for an alternative or modified work schedule, which was denied. Am. Compl. ¶ 47; *see Ellison v. Napolitano*, 901 F. Supp. 2d 118, 129 (D.D.C. 2012) ("[R]equests for accommodation may constitute protected activity and therefore . . . allegations regarding those requests may support . . . claims of retaliation . . . ."); *Ellis v. Georgetown Univ. Hospital*, 631 F. Supp. 2d 71, 77 (D.D.C. 2009) ("Requests for accommodation are 'protected activities' within the meaning of the ADA." (quoting *DuBerry v. District of Columbia*, 582 F. Supp. 2d 27, 37 (D.D.C. 2008))). Plaintiff's termination occurred slightly over a month later on October 18, 2013. *Id.* ¶ 49. The approximately one-month temporal proximity between Plaintiff's protected activity under the ADA and the adverse employment action is sufficient to support a plausible inference of causation at the motion to dismiss stage. *See Hamilton*, 666 F.3d at 1358 (stating, in a Title VII case, that "temporal proximity can indeed support an inference of causation, but only where the two events are very close in time" and that typically three months is the outer limit) (citation and internal quotation marks omitted). Accordingly, the court denies Defendant's motion to dismiss as to Plaintiff's retaliation claim under the ADA and her related retaliation claim under the DCHRA.

    **D.**    **Retaliation under the National Labor Relations Act (Fourth Claim)**

Plaintiff similarly alleges that DOES retaliated against her by terminating her for union activities. Specifically, she contends that DOES removed her from her position for "seeking to organize the ALJs within the Agency to become members of the union . . . in violation of the [National Labor Relations Act ("NLRA")]." Am. Compl. ¶ 88; *see also id.* ¶ 89 (asserting "her termination for participation in a protected activity, such as seeking to organize the ALJs within the Agency"). However, federal courts lack jurisdiction to hear such matters in the first instance and must defer to the exclusive jurisdiction of the National Labor Relations Board. *See San Diego*

*Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 245 (1959) ("When an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.").

Plaintiff argues in her Opposition that the court can resolve her retaliation claim under the NLRA under relevant Supreme Court precedent.  Pl.'s Opp'n at 28-31.  However, Plaintiff cites to cases standing for the proposition that the federal courts may only assume jurisdiction in the first instance over NLRA claims that are collateral to a fair representation claim.  *See, e.g., Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 50 (1998) ("Federal courts can only resolve § 7 and § 8 claims [under the NLRA] that are collateral to a duty of fair representation claim."). However, those cases are inapplicable here, as Plaintiff has not alleged a fair representation claim. As a result, the court dismisses Plaintiff's retaliation claim under the NLRA for lack of subject matter jurisdiction.

### E.   Retaliation under the District of Columbia Whistleblower Protection Act (Fifth Claim)

Next, Plaintiff alleges that DOES retaliated against her in violation of the District of Columbia Whistleblower Protection Act ("DC-WPA") for "disclosing to members of the District of Columbia City Council . . . [DOES'] unlawful use of private company worker's compensation fund money." Am. Compl. ¶ 94.

To sustain a claim under the DC-WPA, a plaintiff must plead "(1) a protected disclosure; (2) a prohibited personnel action; and (3) a causal connection between the protected disclosure and the prohibited personnel action, such that the protected disclosure was at least a contributing factor in the personnel action." *Bowyer v. District of Columbia,* 910 F. Supp. 2d 173, 191–92 (D.D.C.

2012) (internal quotation marks omitted); *see also Freeman v. District of Columbia,* 60 A.3d 1131, 1141 (D.C. 2012).

Plaintiff has sufficiently alleged both that she made a protected disclosure and that Defendant retaliated against her for making that disclosure. First, Plaintiff's disclosure of potential misuse of public funds qualifies as a protected disclosure under the DC-WPA. *See* D.C. Code § 1–615.52(a)(6) (listing "gross mismanagement . . . [and] misuse or waste of public resources or funds" as protected disclosures). Further, and contrary to Defendant's position, Plaintiff has also sufficiently alleged facts indicating that her protected disclosure was the basis for her termination. Defendant contends that Plaintiff "cannot show causation" because "at least three months passed" between her protected disclosure and her termination. Def.'s Mem. at 13. In support of its argument, Defendant cites to several cases from this Circuit standing for the proposition that three months represents the outer limit of casual connection between a protected disclosure and an adverse employment action when a plaintiff bases causation on "temporal proximity *alone*." *Id.* (quoting *Payne v. District of Columbia*, 4 F. Supp. 3d 80, 88-89 (D.D.C. 2013)).

Defendant reads Plaintiff's claim too narrowly. Plaintiff is not alleging causation through temporal proximity *alone*. Rather, reading the Amended Complaint in the light most favorable to the Plaintiff, she alleges that, after she engaged in protected activity in June or July 2013, her supervisors "continued to erroneously charge [her] with AWOL . . . in spite of knowledge that [she] worked a full 40 hour work week . . . [and thus] illegally withheld pay and benefits." Am. Compl. ¶ 43. As the DC-WPA "borrows its standards from the Title VII context," *Mentzer v. Lanier*, 677 F. Supp. 2d 242, 251 n.6 (D.D.C. 2010), illegally withholding pay constitutes an adverse employment action, which can be considered for the purpose of establishing causation. *See Freedman v. MCI Telecomm. Corp.*, 255 F.3d 840, 848 (D.C. Cir. 2001) (noting that

"diminution in pay" is a sufficiently adverse employment action to trigger liability under Title VII). If proven true, the adverse employment actions leading to Plaintiff's termination—namely, the ongoing AWOL accrual—occurred throughout the three-month period between Plaintiff's whistle-blowing activity and her termination, thus establishing a plausible inference to support the element of causation. *See Greer*, 113 F. Supp. 3d at 311 (stating that "[a] large gap between protected activity and retaliation is not necessarily fatal to a claim when the plaintiff can point to other factors leading to an inference of causation"). Accordingly, Plaintiff has sufficiently alleged her DC-WPA claim.

Plaintiff also brings a similar claim under the Whistleblower Protection Act (WPA). That claim must be dismissed, however, because the WPA only protects federal employees, *Stella v. Minetta*, 284 F.3d 135, 142 (D.C. Cir. 2002), thus rendering that statute inapplicable to Plaintiff.

### F.    Common Law Claims (Sixth through Eleventh Claims)

In addition to her federal and District of Columbia statutory claims, Plaintiff has advanced several common law claims: intentional infliction of emotional distress; negligent infliction of emotional distress; negligent supervision; negligence per se; defamation per se; and civil conspiracy. *See* Am. Compl. ¶¶ 103-142. Defendant argues that all of these claims must be dismissed because Plaintiff "has not provided the notice required under D.C. Code section 12-309." Def.'s Mem. at 22. The court agrees.

D.C. Code § 12-309 provides:

> [A]n action may not be maintained against the District of Columbia for unliquidated damages . . . unless, within six months after the injury or damage was sustained, the claimant . . . has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice.

D.C. Code § 12-309. "Compliance with the notice requirement is mandatory" and must be "strictly construed." *Blocker-Burnete v. District of Columbia*, 730 F. Supp. 2d 200, 203 (D.D.C. 2010).

Here, Plaintiff concedes that she did not provide notice to the Mayor (and did not file a police report). She nevertheless contends that she has satisfied the requirements of Section 12-309 because she gave notice of her claims to the District's EEO office. Pl.'s Opp'n at 38-39. Plaintiff is wrong, however. Courts in this District have consistently held that, to satisfy Section 12-309's notice requirements, a plaintiff must give notice either to the Mayor or in a relevant police report prepared in the regular course of duty. *See Cornish*, 67 F. Supp. 3d at 371 (stating that "§ 12-309 requires notice to the Mayor, not to any other District agency or administrative body"); *Blocker-Burnette v. District of Columbia*, 730 F. Supp. 2d 200, 204 (D.D.C. 2010) (stating that "[o]nly two types of notice can satisfy the requirements of Section 12-309"—written notice to the Mayor or a police report prepared in the regular course of duty). Notice to any other District government agency, including to the District's EEO office, does not satisfy the notice requirement. *See Cornish*, 67 F. Supp. 3d at 371 (rejecting notice through the District of Columbia courts or the EEOC); *Blocker-Burnette*, 730 F. Supp. 2d at 204 (rejecting notice through the District of Columbia Office of Human Rights); *Faison v. District of Columbia*, 664 F. Supp. 2d 59, 68 (D.D.C. 2009) (rejecting notice through the EEOC, "which was cross-filed with the District of Columbia Office of Human Rights"). Accordingly, having failed to give notice of her common law claims to the Mayor, Plaintiff's common law claims must be dismissed.[4]

---

[4] The court recognizes that D.C. Code § 12-309 applies only to unliquidated damages. However, the court does not construe Plaintiff's Amended Complaint to allege liquidated damages in regard to her common law claims. Nor has Plaintiff argued that her common law claims can survive, even in part, because they seek recovery of liquidated damages. Therefore, the court dismisses those claims in their entirety.

V.   **CONCLUSION AND ORDER**

For the foregoing reasons, Defendant's Motion to Dismiss is granted in part and denied in part. More specifically, the motion to dismiss is granted, without prejudice, as to the following claims:

1. Third Claim for gender discrimination under Title VII and the DCHRA;

2. Third Claim under the Equal Pay Act;

3. Fourth Claim for retaliation under Title VII and related retaliation claim under the DCHRA.

The Motion to Dismiss is granted as to the following claims, with prejudice:

1. Third Claim under the Lily Ledbetter Fair Pay Act;

2. Fourth Claim for retaliation under the NLRA;

3. Fifth Claim under the federal WPA;

4. Sixth Claim for intentional infliction of emotional distress;

5. Seventh Claim for negligent infliction of emotional distress;

6. Eight Claim for negligent supervision;

7. Ninth Claim for negligence per se;

8. Tenth Claim for defamation per se;

9. Eleventh Claim for conspiracy.

The Motion to Dismiss is denied as to the following claims:

1. Third Claim for race discrimination under Title VII and the DCHRA;

2. Third Claim under the Fair Labor Standards Act;

3. Fourth Claim for retaliation under the ADA and related retaliation claim under the DCHRA;

4. Fifth Claim for retaliation under the DC-WPA.

Dated:  September 30, 2016
                                              Amit P. Mehta
                                              United States District Judge