# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | ) | |
|---|---|---|
| SAUNDRA M. MCNAIR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cv-00729 (APM) |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

**I.     INTRODUCTION**

Plaintiff, a former Administrative Law Judge for Defendant District of Columbia, was terminated from her job in 2013. According to Defendant, the termination occurred because Plaintiff missed 90 minutes of work daily for over a year after Defendant denied her request to keep an alternate work schedule that would have allowed her to arrive and leave 90 minutes early.

Following her firing, Plaintiff brought a litany of claims against Defendant. Many of her claims did not survive the motion-to-dismiss stage, but seven proceeded to discovery and now are the subject of Defendant's motion for summary judgment. Those claims include the failure to allow her to work an alternate work schedule in violation of (1) the Americans with Disabilities Act (ADA) for failure to reasonably accommodate, and in violation of (2) Title VII and (3) the District of Columbia Human Rights Act (DCHRA) for race discrimination. Plaintiff also claims that Defendant violated (4) the ADA and (5) the DCHRA when it retaliated against her for making a reasonable accommodation request and discriminated against her for her disability by firing her. Plaintiff further asserts that her termination violated (6) the District of Columbia Whistleblower Protection Act, because she made two purported protected disclosures that led to her termination.

And, finally, Plaintiff avers that Defendant compensated her below the minimum wage in violation of (7) the Fair Labor Standards Act.

For the reasons explained below, the court grants summary judgment in favor of Defendant as to all of Plaintiff's claims, except for the denial of reasonable accommodation under the ADA. As to that claim, the court finds that Plaintiff has made out a prima facie case and may present her case to a jury.

## II. BACKGROUND

### A. Factual Background[1]

The District of Columbia Department of Employment Services hired Plaintiff as an Administrative Law Judge in March 2009. *See* Def.'s Mot. for Summ. J., ECF No. 72 [hereinafter Def.'s Mot.]; Def.'s Stmt. of Material Facts in Support of Def.'s Mot. for Summ. J., ECF No. 72 [hereinafter Def.'s Stmt. of Facts], ¶ 1. In February 2010, Plaintiff's supervisor notified her that her "tour of duty" would be 8:00 a.m. to 4:30 p.m. *Id.* ¶ 2. Plaintiff submitted a request for accommodation on April 16, 2010, specifically, to work from 7:00 a.m. to 3:30 p.m. and to telecommute as needed, *see id.* ¶ 3, due to conditions such as lupus, "failed back surgery syndrome," and a lumbar disc disorder, *see* Def.'s Mot., Exs. 2, 3, ECF Nos. 72-2, 72-3. Defendant sought additional documentation from Plaintiff less than a week later, but Plaintiff never submitted the requested information. *See* Def.'s Stmt. of Facts ¶ 4. Ultimately, Defendant never resolved Plaintiff's request, because soon after she made it, Plaintiff was away from the office from July 2010 to April 2012. *See id.* ¶ 5.

---

[1] In opposing Defendant's Motion for Summary Judgment, Plaintiff failed to controvert any fact asserted in Defendant's supporting statement of undisputed facts. *See* Def.'s Mot. for Summ. J., ECF No. 72, Def.'s Stmt. of Material Facts in Support of Def.'s Mot. for Summ. J., ECF No. 72; Pl.'s Response about Mot., ECF No. 75, at 5–6 (containing a two-paragraph "Itemization of Undisputed Facts" that does not contest any facts asserted by Defendant). The court therefore treats as true the facts asserted in Defendant's statement. *See* Fed. R. Civ. P. 56(e); LCvR 7(h)(1).

Upon her return, on April 30, 2012, Plaintiff submitted a request to participate in Defendant's Alternate Work Schedule program, which would allow her to work from 7:00 a.m. to 3:30 p.m. *See id.* ¶ 9. Defendant denied the request in November 2012. *Id.* Despite the denial, Plaintiff continued to work each day from 7:00 a.m. to 3:30 p.m. *Id.* ¶ 10.

In November 2012, Plaintiff's supervisor, Chief Judge George Crawford, notified her that her "tour of duty" had changed to 8:30 a.m. to 5:00 p.m. *See id.* ¶ 11. Crawford also warned Plaintiff that she would be treated as Absent Without Leave ("AWOL") if she did not comply with those work hours. *See id.* Notwithstanding the warning, Plaintiff continued to work from 7:00 a.m. to 3:30 p.m. *See id.* ¶ 10.

On December 4, 2012, Plaintiff left a letter from her physician, Dr. John Byrne, on Chief Judge Crawford's chair. *See id.* ¶ 12. Dr. Byrne noted that Plaintiff was "under his care for a disability of her knees" and recommended that her employer allow Plaintiff to work from 7:00 a.m. to 3:30 p.m. to avoid rush hour traffic. *See id.*; *see also* Def.'s Mot.; Ex. 10, ECF No. 72-10 [hereinafter Physician Letter]. The record does not indicate what action, if any, Chief Judge Crawford took with respect to this request for an alternate work schedule. Chief Judge Crawford stopped working at the Department of Employment Services shortly after December 4, 2012. *See* Def.'s Stmt. of Facts ¶ 12.

Nine months later, on August 14, 2013, Defendant issued Plaintiff an Advance Written Notice of Proposed Removal, which proposed to terminate Plaintiff for cause based on her having accrued 194.5 AWOL hours and for insubordination. *See id.* ¶ 14; Def.'s Mot.; Ex. 6, ECF No. 72-6. Defendant terminated Plaintiff on October 18, 2013, for the accumulation of AWOL hours and insubordination. *See* Def.'s Stmt. of Facts ¶ 15; Def.'s Mot.; Ex. 7, ECF No. 72-7, at 3.

Throughout her employment from November 2012 to July 2013—the period in which Defendant counted AWOL hours—Plaintiff earned either $40.17 per hour or $41.37 per hour. *See* Def.'s Stmt. of Facts ¶¶ 17–18; Def.'s Mot; Ex. 8, ECF No. 72-8, ¶¶ 2–3.

### B. Procedural Background

Plaintiff filed this action on May 13, 2015. *See* Compl., ECF No. 1. On January 1, 2016, she filed an Amended Complaint, containing a myriad of claims against the District of Columbia, the Department of Employment Services, and three individuals employed by the District of Columbia. *See* Am. Comp., ECF No. 12. In a series of opinions, the court dismissed many claims and parties from the action. *See* Mem. Op., ECF No. 35; *see also* Mem. Op., ECF No. 45; *see also* Mem. Op., ECF No. 69. What remains are the following claims against the sole remaining Defendant, the District of Columbia: (1) failure to accommodate under the Americans with Disabilities Act ("ADA"); (2) retaliation and disability discrimination under the ADA and the District of Columbia Human Rights Act ("DCHRA"); (3) race discrimination under Title VII and the DCHRA; (4) failure to compensate under the Fair Labor Standards Act; and (7) retaliation under the District of Columbia Whistleblower Protection Act.

Defendant moved for summary judgment on all remaining claims on July 13, 2018. *See* Def.'s Mot.[2] Plaintiff filed an Opposition on August 27, 2018. *See* Pl.'s Response about Mot., ECF No. 75 [hereinafter Pl.'s Resp.]. Defendant replied on October 3, 2018. *See* Def.'s Reply, ECF No. 76.

## III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[2] Throughout this opinion, citations to Defendant's Motion are to the pagination of the motion and not to the ECF numbering.

56(a). A "genuine dispute" of a "material fact" exists when the fact is "capable of affecting the substantive outcome of the litigation" and "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Elzeneiny v. District of Columbia*, 125 F. Supp. 3d 18, 28 (D.D.C. 2015) (citations omitted).

In assessing a motion for summary judgment, the "court considers all relevant evidence presented by [the parties]." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 495 (D.C. Cir. 2008). The court looks at the facts in the light most favorable to the nonmoving party and draws all justifiable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If the court determines "no reasonable jury could reach a verdict in her favor," then summary judgment is appropriate. *Wheeler v. Georgetown University Hosp.*, 812 F.3d 1109, 1113 (D.C. Cir. 2016). Courts are "not to make credibility determinations or weigh the evidence." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).

## IV. DISCUSSION

### A. Failure to Accommodate under the ADA

Before addressing Defendant's arguments, the court notes that Plaintiff made two, possibly three, requests for reasonable accommodation, one of which does not present a cognizable claim. Plaintiff first asked for accommodation in April 2010, seeking both an alternate work schedule (7:00 a.m. to 3:30 p.m.) and occasionally to work from home. Def.'s Stmt. of Facts ¶ 3. Defendant never formally denied this first request, however, because Plaintiff failed to respond to Defendant's follow up for additional information and soon thereafter began a nearly two-year-long leave of absence. *See id.* ¶¶ 4–5. As to this first accommodation request, Plaintiff can state no claim.

Plaintiff made a second request for accommodation after she returned from her leave. *See* Def.'s Stmt. of Facts ¶ 9. The record as to this request is muddled, however. On April 30,

5

2012, Plaintiff asked to work a "Flexible Work Schedule," which her supervisor recommended for approval. *See* Def.'s Mot., Ex. 5, ECF No. 72-5.[3] But Defendant apparently took no final action as to this request until November 2012. Kameron Kima-Cherry, an employee in Defendant's Human Resources Department, disapproved the alternate work schedule on November 14, 2012, *see id.*, and Plaintiff's supervisor, Chief Judge Crawford, instructed Plaintiff on November 19, 2012, that she was required to work the "standard tour of duty hours" of 8:30 a.m. to 5:00 p.m., *see* Def.'s Mot., Ex. 11, ECF No. 72-11. The record contains neither a reason for the long delay in responding to Plaintiff's request nor a reason for rejecting it. Then, according to Plaintiff, on or about December 4, 2012, she left a letter from her doctor on the chair of Chief Judge Crawford, which asked that she be able to work an alternate work schedule—a possible third request. *See* Def.'s Stmt. of Facts ¶ 12. The record is silent as to what, if any, action Defendant took following receipt of the doctor's letter. The court evaluates these two additional requests against Defendant's arguments.

To make out a prima facie case of discrimination based on a failure to accommodate, a "plaintiff must demonstrate by a preponderance of evidence: (1) that she was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of her disability; (3) that with reasonable accommodation she could perform the essential functions of her job; and (4) that the employer refused to make such accommodations." *Etheridge v. FedChoice Federal Credit Union*, 789 F. Supp. 2d 27, 35 (D.D.C. 2011) (citation omitted). Defendant argues that

---

[3] Defendant does not assert that Plaintiff's April 2012 request did not provide adequate notice of an accommodation request. *See* Def.'s Mot. at 11–12 (arguing that the 2012 AWS request demonstrated Plaintiff's unwillingness to participate in interactive process). But even if Defendant did make such an argument, viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that the April 2012 request put Defendant on notice that Plaintiff was seeking accommodation for disability, thus triggering the interactive process. *See Crandall v. Paralyzed Veterans of America*, 146 F.3d 894, 898 (D.C. Cir. 1998); *Floyd v. Lee*, 85 F. Supp. 3d 482, 506 (D.D.C. 2015).

Plaintiff fails to establish a prima facie case for two reasons. *See* Def.'s Mot. at 6.[4] First, it contends that Plaintiff does not meet the third element because "she cannot show a causal connection between the accommodation sought and her limitation." *Id.* Second, Defendant maintains that Plaintiff cannot meet the fourth element because "she cannot show that [Defendant] failed to engage in the interactive process." *Id*. The court rejects both arguments.

### 1. Causal Connection between the Accommodation Sought and Plaintiff's Limitation

Defendant's first contention—that Plaintiff cannot show a causal connection between the accommodation sought and her limitation—fails because Plaintiff's physician letter, dated November 30, 2012, is to the contrary. "[W]hen an employee seeks a workplace accommodation, the accommodation must be related to the limitation that rendered the person disabled." *Adams v. Rice*, 531 F.3d 936, 944 (D.C. Cir. 2008) (internal quotation marks and citation omitted). According to her physician, Plaintiff had a "disability of her knees" and "[s]he needs accommodation so that she can avoid the rush hour traffic . . . which would significantly be detrimental to her recovery because of the motion in her knee during driving and potential stop and go situations in her car." Physician Letter. The physician's letter creates a genuine dispute of material fact as to whether there is a causal connection between Plaintiff's request for alternative work hours and the limitation that rendered her disabled.

### 2. Interactive Process

Defendant's second contention—that Plaintiff failed to participate in the required interactive process—also fails. The interactive process is "a flexible give-and-take between employer and employee so that together they can determine what accommodation would enable

---

[4] Defendant argues only that Plaintiff cannot make out a prima facie case for failure to accommodate. See Def.'s Mot. at 6–10. Defendant does not argue that it denied Plaintiff's accommodation request for a reason unrelated to her claimed disability or some other valid reason.

the employee to continue working." *Ward v. McDonald*, 762 F.3d 24, 32 (D.C. Cir. 2014) (internal quotation marks and citations omitted). Courts "should attempt to isolate the cause of the breakdown and then assign responsibility." *Id.*

Defendant's argument focuses primarily on Plaintiff's failure to supply the follow-up information requested by her employer on April 22, 2010, after Plaintiff submitted her first request. *See* Def.'s Mot. at 10–15. But that is not the relevant inquiry. The pertinent question is which party, if any, was responsible for the ineffectiveness of the interactive process following Plaintiff's second and third demands. There is no evidence that anyone requested additional information from Plaintiff after she made her second request for a modified work schedule in April 2012. Indeed, as discussed, Defendant offers no explanation for why, even though Plaintiff's supervisor approved her request for an alternate work schedule the day she submitted it, *see* Def.'s Mot., Ex. 5, the agency did not formally deny it until six months later, on November 14, 2012, *see id.* Likewise, the record is silent as to what steps, if any, Defendant took following its receipt of the letter from Plaintiff's physician in December 2012, which explicitly justified Plaintiff's need for an alternate work schedule. Defendant complains that Plaintiff did not provide the letter to Human Resources, *see* Def.'s Mot. at 15, but otherwise does not defend what appears to be inaction on its part. Based on these disputed facts, a reasonable juror could find that Defendant, not Plaintiff, failed to engage in the interactive process. Accordingly, Plaintiff's claim for failure to accommodate under the ADA survives summary judgment.

### B. Race Discrimination under Title VII and DCHRA

Next, Plaintiff alleges that Defendant denied her an alternate work schedule based on her race. To prove a Title VII and DCHRA race discrimination claim, a plaintiff must show that she suffered an adverse employment action because of her race. *See Baloch v. Kempthorne*, 550 F.3d

1191, 1196 (D.C. Cir. 2008); *see also Vatel v. Alliance of Automobile Manufacturers*, 627 F.3d 1245, 1246 (D.C. Cir. 2011). An adverse employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *see also Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003). To establish an adverse action, a plaintiff must show that she "experience[d] materially adverse consequences affecting the terms, conditions, or privileges of employment . . . such that a reasonable trier of fact could find objectively tangible harm." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002).

Courts in this Circuit consistently have held that denial of an alternate work schedule, by itself, is not an adverse action. *See Hunter v. District of Columbia*, 905 F. Supp. 2d 364, 373 (D.D.C. 2012); *see also Williams v. Donovan*, 219 F. Supp. 3d 167, 175–76 (D.D.C. 2016). This case is no different. Plaintiff has submitted no evidence that Defendant's denial of her request to work from 7:30 a.m. to 3:30 p.m. caused a significant change in employment status or a materially adverse consequence. *See* Pl.'s Resp. at 14–15.[5] The mere denial of her request for an alternate work schedule, therefore, cannot sustain her race discrimination claims.

Plaintiff also contends that Defendant's denial of her request to occasionally work from home was an adverse action. *See id.* at 5. But Defendant never denied Plaintiff's request to work from home. Instead, Plaintiff made the request, Defendant asked for more documentation, and Plaintiff was then absent from work for nearly two years. *See* Def.'s Stmt. of Facts ¶¶ 3–5. Nonetheless, even if Defendant had denied the request, it would not constitute an adverse action.

---

[5] At the Motion to Dismiss stage, the court allowed Plaintiff to proceed on her Title VII race discrimination claim for "other adverse actions, such as failure to promote and termination." Memorandum Opinion, ECF No. 35, at 5. Plaintiff did not raise any other adverse actions—such as failure to promote or termination—at the Motion for Summary Judgment stage, however, so the court does not address those issues here.

9

Much like the denial of an alternative work schedule, the denial of a request to work from home, in and of itself, is not an adverse action. *See Walker v. McCarthy*, 170 F. Supp. 3d 94, 106 (D.D.C. 2016) (citing cases); *see also Ng v. Lahood*, 952 F. Supp. 2d 85, 96 (D.D.C. 2013). Plaintiff has offered no evidence that would warrant a finding of adversity here.

For these reasons, Defendant's Motion for Summary Judgment on the Title VII and DCHRA race discrimination claims is granted.

### C. Disability Discrimination and Retaliation under the ADA and DCHRA

Plaintiff's next set of claims are that Defendant violated the DCHRA by terminating her because of her disability, *see* Am. Compl., ECF No. 12, ¶¶ 65–69, and violated the ADA and the DCHRA by terminating her in retaliation for making a reasonable accommodation request, *see id.* ¶¶ 83–85. ADA and DCHRA retaliation and discrimination claims are analyzed under the *McDonnell Douglas* three-step framework. *See Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005) (stating that *McDonnell Douglas* framework applies in ADA retaliation cases); *see also Ranowsky v. National Railroad Passenger Corp.*, 244 F. Supp. 3d 138, 143 (D.D.C. 2017) (stating that DCHRA discrimination and retaliation claims analyzed under *McDonnell Douglas*); *see also Vatel v. Alliance of Auto. Mfrs.*, 627 F.3d 1245, 1246 (D.C. Cir. 2011). However, if an "employer offers a non-discriminatory or non-retaliatory reason for the challenged action, the burden-shifting framework disappears and the court's inquiry narrows . . . [T]he only relevant inquiry is whether the employee has put forth sufficient evidence for a reasonable jury to conclude that the employer's proffered explanation is a mere pretext and the employer intentionally discriminated or retaliated against the employee." *Ranowsky*, 244 F. Supp. 3d at 143–44; *see also Vatel*, 430 F.3d at 306.

Here, Defendant asserts a non-discriminatory and non-retaliatory justification for Plaintiff's termination: she had accumulated 194.5 hours of AWOL and she was deemed to be insubordinate. *See* Def.'s Stmt. of Facts ¶¶ 14–15. Plaintiff counters this explanation by arguing that "other[s] were treated more favorably and allowed to work modified work schedules and permitted to work from home." Pl.'s Resp. at 12. But that argument fails for two reasons. First, for the retaliation claim, the pertinent question is not whether others were treated more favorably with respect to the denied accommodation request, but instead whether Defendant did not terminate others for engaging in comparable misconduct. *See Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1115–16 (D.C. Cir. 2016) ("For a plaintiff to prove that she is similarly situated to another employee, she must demonstrate that she and the alleged similarly-situated employee 'were charged with offenses of comparable seriousness,' and 'that all of the relevant aspects of [her] employment situation were nearly identical to those of the other employee.'") (citation omitted). Second, Plaintiff offers no evidence whatsoever to support her contention of disparate treatment based on disability. She points to no specific comparator that would allow the court to evaluate whether Defendant treated her differently than other similarly situated employees, or to any other pertinent evidence. *See id.*

Defendant's Motion for Summary Judgment, therefore, is granted as to Plaintiff's disability discrimination claim under the DCHRA and Plaintiff's retaliation claim under the ADA and the DCHRA.

**D.    Unlawful Compensation under the Fair Labor Standards Act**

The court turns next to Plaintiff's claim under the Fair Labor Standards Act ("FLSA"). *See* Am. Compl., ECF No. 12, ¶¶ 5, 75. Plaintiff contends that Defendant did not compensate her

11

about ten hours each week because it did not pay her for her AWOL hours. *See* Pl.'s Resp. at 14–15. This accusation, even if true, does not give rise to an FLSA minimum-wage claim.

A cause of action under the FLSA will not lie "so long as the total weekly wage paid by an employer meets the minimum weekly requirements of the statute, such minimum weekly requirement being equal to the number of hours actually worked that week multiplied by the minimum hourly statutory requirement." *Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 357 (8th Cir. 1986) (citation omitted); *see also Dove v. Coupe*, 759 F.2d 167, 172 (D.C. Cir. 1985). The minimum wage is $7.25 per hour. *See* 29 U.S.C. § 206(a)(1)(C) (2016). Plaintiff claims she worked forty hours per week. Pl.'s Resp. at 14–15. So, to satisfy the FLSA, Defendant would need to have paid Plaintiff at least $290.00 weekly, which is $7.25 per hour multiplied by 40 hours per week.

Plaintiff's weekly income well exceeded the minimum requirement. Defendant paid Plaintiff at either $40.17 per hour or $41.37 per hour throughout the relevant period. *See* Def.'s Stmt. of Facts ¶ 17–18; Def.'s Mot; Ex. 8, ECF No. 72-8. The first wage, multiplied by thirty hours, resulted in a weekly income of $1,205.10. The second wage, multiplied by thirty hours, resulted in a weekly income of $1,241.10. Both wages satisfied the FLSA's minimum wage requirement. Plaintiff's FLSA claim, therefore, cannot survive summary judgment.

E.     **Retaliation under the D.C. Whistleblower Protection Act**

Plaintiff's final claim is that Defendant violated the D.C. Whistleblower Protection Act ("DCWPA") by terminating her for making two protected disclosures. DCWPA claims are analyzed under a burden-shifting framework. *See Coleman v. District of Columbia*, 794 F.3d 49, 54 (D.C. Cir. 2015). "To make out a prima facie claim of retaliation under the Whistleblower Act, the plaintiff must show by a preponderance of the evidence that (i) she made a statutorily protected

disclosure, and (ii) the disclosure was a 'contributing factor' behind (iii) an adverse personnel action taken by her employer." *Id.* A protected disclosure is a disclosure that the whistleblower "reasonably believes" would show evidence of gross mismanagement; gross misuse or waste of public resources or funds; abuse of public authority; violation of law; or a substantial and specific danger to public health and safety. *Id.* (citing D.C. Code § 1–615.52(a)(6)). A contributing factor is "any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the [employment] decision." D.C. Code § 1–615.52(a)(2). Plaintiff's termination constitutes an adverse action. *See* D.C. Code § 1–615.52(a)(5)(A).

Plaintiff avers that she made two protected disclosures. First, in 2009, she alerted the D.C. City Council about alleged theft from a workers' compensation fund. *See* Pl.'s Resp. at 16; *see also* Def.'s Mot.; Ex. 4, ECF No. 72-4, at 139 (in deposition, Plaintiff saying she made disclosure to Council "sometime in 2009"). Second, in about June 2013, she notified her supervisors that a colleague was falsifying timesheets. *See id.* at 17; *see also* Notice, ECF No. 78, Plaintiff's Deposition, ECF No. 78-1, at 130. Plaintiff fails to make out a prima facie claim as to either disclosure.

Plaintiff has not shown by a preponderance of the evidence that her disclosure to City Council members of theft from a workers' compensation fund was a contributing factor behind her termination. Plaintiff made this disclosure in 2009. *See* Pl.'s Resp. at 16; *see also* Def.'s Mot.; Ex. 4, ECF No. 72-4, at 139. Defendant terminated her in the fall of 2013. *See* Def.'s Stmt. of Facts ¶¶ 14–15. Four years is far too long for a reasonable jury to believe this disclosure was a contributing factor to Plaintiff's termination. *See Booth v. District of Columbia*, 701 F. Supp. 2d 73, 81 (D.D.C. 2010) (stating that "claims premised on alleged retaliatory acts over four months *after* plaintiffs' protected activity do not permit an inference of causation . . . [and] absent

13

additional evidence of causation . . . these claims must fail"). Furthermore, Plaintiff points to no evidence showing that the personnel who fired her knew about her disclosures to the City Council. *See McFarland v. George Washington University*, 935 A.2d 337, 357 (D.C. 2007) (observing that "it simply defies logic to charge an employer with acting in retaliation for an action of which the employer was not, in fact, made aware") (citations and quotations omitted).

Plaintiff's other disclosure—that a colleague was falsifying timesheets—occurred much closer to her termination, as Plaintiff made the disclosure in June 2013 and received notice of her termination in August 2013. Despite this proximity of time, Plaintiff fails to show the disclosure was a contributing factor to her termination. For purposes of the DCWPA, "an inference of retaliation cannot rest solely on temporal proximity . . . where the opportunity for retaliation conflicts with the opponent's explicit evidence of an innocent explanation." *Johnson v. District of Columbia*, 935 A.2d 1113, 1120 (D.C. 2007); *see also Freeman v. District of Columbia*, 60 A.3d 1131, 1145 (D.C. 2012). Here, Defendant justified the termination based on excessive AWOL hours and insubordination. Other than temporal proximity, Plaintiff identifies no other evidence to counter Defendant's non-retaliatory justification. Moreover, Plaintiff offers no proof that the people responsible for her termination even knew she made the disclosure. According to the final termination notice, Thomas Luparello made the decision and Christine Davis served as a hearing officer. *See* Def.'s Mot.; Ex. 7, ECF No. 72-7. There is no evidence establishing that either Luparello or Davis knew about the June 2013 disclosure, and Plaintiff does not raise a "cat's paw theory" that those who knew about her disclosures notified Luparello or Davis. *Cf. Coleman*, 794 F.3d at 64 n.8 (recognizing that a lower-level supervisor could proximately cause the employment action).

Finally, the fact that Plaintiff was warned about her termination before she made the June 2013 disclosure undermines any inference of retaliation. In November 2012, Chief Judge Crawford admonished Plaintiff: "Failure to comply [with the designated work hours] will result in you being charged AWOL for the hours you are away from your duty station due to early departure. Failure to comply will result in corrective or adverse action." Def.'s Mot.; Ex. 11, ECF No. 72-11. That Defendant carried through with its warning, in the absence of any other evidence, negates an inference of retaliation.

For these reasons, Plaintiff's DCWPA retaliation claim falls.

## V. CONCLUSION AND ORDER

For the reasons set forth above, Defendant's Motion for Summary Judgment, ECF No. 72, is granted in part and denied in part. The parties shall appear for a status hearing in this matter on February 22, 2019, at 9:15 a.m., in Courtroom 10.

Dated: February 8, 2019

Amit P. Mehta
United States District Judge